## TRAVIS COUNTY ET AL. V. ROBERT TROGDON AND WIFE.

### No. 301.

**1. Property Taken for Public Use—Public Roads.**

The provision in the Constitution of 1876 touching property taken, etc., that "such compensation shall be first made or secured by a deposit of money," was an additional guaranty for the protection of the rights of the owner. And the express exception made where property is taken for the use of the State includes condemnations for public roads by Commissioners Courts .. 307

**2. Public Roads.**

It is one of the functions of government to establish and maintain public roads; and no matter through what agency such function is exercised, the roads are the property and for the use of the State ...................... 307

3. Condemnation Proceedings—Public Road.

Dulaney v. Nolan County, 85 Texas, 225, adhered to as to construction of the
clause of the Constitution of 1876 as to adequate compensation for land
taken for public roads, viz., value of land taken and damages to remain-
ing lands   ....... ............................................... 309

4. Same—Statute Construed.

Article 4372, Revised Statutes, as amended in chapter 13, Eighteenth Legis-
lature, page 22 (February 5, 1884), prescribed, that the Commissioners
Courts shall  *  *  *  "allow to such owner just damages and adequate
compensation for the land taken." This is in conformity with the Con-
stitution. The "just damages" may be offset by benefits to the adjoining
land, if they exist; but both the Constitution and the statute uncondition-
ally command that "adequate compensation" be made for the land taken,
and no offset thereto can be allowed....... ......................... 309

5. Injunction—Adequate Compensation.

As the Constitution commands that "adequate compensation" shall be made
for property taken, courts of equity have ample power to enforce its man-
date as against a collusive or colorable order designed to defeat the consti-
tutional provision ............................................... 310

6. Case in Judgment.

The jury of view of a public road surveyed through Trogdon's lands reported
no damages, although the road covered lands shown to be worth $60. The
county commissioners adopted the report, allowed Trogdon no damages or
compensation, and ordered the road opened. Trogdon appealed. Pending
the appeal, the road overseer was proceeding to open the road. Trogdon
obtained an injunction from the District Court, which was made permanent
on hearing. *Held,* that in refusing to allow Trogdon "adequate compensa-
tion for the land taken" the commissioners failed to comply with either the
statute or the Constitution. And in failing to pay or secure same "by de-
posit with the county treasurer," it failed to comply with the statute, and
therefore had no authority to order the opening of the road; and they were
properly enjoined until such compensation should be made or secured. .305, 310

ERROR to Court of Civil Appeals for Third District, in an appeal
from Travis County.

*A. S. Walker, Jr.,* for plaintiffs in error.—1. The District Court has
no power or jurisdiction to control the action of the Commissioners
Court, except where it proceeds without jurisdiction or in excess of
jurisdiction. The Commissioners Court has jurisdiction to establish
roads, its action in that respect being exclusive except as to award of
damages. Where the Commissioners Court acquires jurisdiction in a
road case and renders its final judgment therein, its action is not with-
out jurisdiction or in excess of jurisdiction, and can only be revised
as to the award of damages by appeal to the County Court, the remedy
prescribed by statute. Bounds v. Kirven, 63 Texas, 159; Bourgeois
v. Mills, 60 Texas, 76; Wooldridge v. Eastland Co., 70 Texas, 681;
Hamilton Co. v. Garrett, 62 Texas, 602; McIntire v. Lucker, 77 Texas,
259; Hamblin v. Knight, 81 Texas, 351; Chisholm v. Adams, 71 Texas,
678; Duck v. Peeler, 74 Texas, 268; Sayles' Civ. Stats., arts. 4360–4375.

2.   Where in a road case a claimant for damages presents his claim to the Commissioners Court, and it is considered and acted on by that court, he may, if dissatisfied with the judgment of the court on the question of damages, appeal to the County Court, but the appeal will not prevent the opening of the road.   Railway v. Ferris, 26 Texas, 598; Smith v. Taylor, 34 Texas, 590; Norris v. City of Waco, 57 Texas, 642; Lewis on Em. Dom., chap. 20, sec. 45, and authorities cited; Rudisill v. The State, 40 Ind., 485; Dronberger v. Reed, 11 Ind., 420; Railway v. Daugherty, 40 Ind., 33; The State v. Messenger, 27 Minn., 119; Sayles' Civ. Stats., art. 4372; Const., art. 1, sec. 17.

3.   The opinion of the Court of Civil Appeals is to the effect, that the taking of private property by a county for use as a public road is not equivalent to a taking by the State for that purpose; that the owner must be first adequately compensated in his damages, or secured in such compensation by a deposit of money; and that a portion of article 4372 of Sayles' Civil Statutes is unconstitutional and void, because it provides, that the appeal to the County Court allowed the property owner who is dissatisfied with the award of damages by the County Commissioners Court shall not prevent the opening of the road.

The State has always been charged with the duty of providing and regulating public roads; and it is so under our present Constitution. Section 24 of article 16, Constitution of 1876, provides:   "The Legislature shall make provision for laying out and working public roads, for the building of bridges, and for utilizing fines, forfeitures, and convict labor to all these purposes."   The fact that the formal proceedings taken for that purpose are conducted in the name of the county under authority expressly conferred by the State, does not prevent the condemnation of land for road purposes from being a "taking for the use of the State."   It is not necessary that the State should be a party to the record, or that the taking should be in the name of the State.   Sherman v. Buick, 32 Cal., 241; State v. Mobeley, 1 McMull. (S. C.), 44; The State v. Sarton, 2 Strobh. (S. C.), 60; Ex Parte Withers, 3 Brev. (S. C.), 85; Kissinger v. Hanselman, 33 Ind., 80; Baldwin v. Herbst, 54 Iowa, 168; Wood v. Hurd, 34 N. J. L., 88; Blackman v. Halves, 72 Ind., 515; Commissioners v. Bowie, 34 Ala., 461; Talbot v. Hudson, 16 Gray, 417; Loweree v. Newark, 38 N. J. L., 151; White v. Railway, 7 Heisk., 518; Williams v. School District, 33 Vt., 271; Bloodgood v. Railway, 18 Wend., 9; Taylor v. Marcy, 25 Ill., 518; The People v. Hayden, 6 Hill, 359; Rudisill v. The State, 40 Ind., 485; Dranberger v. Reed, 11 Ind., 420; Railway v. Daugherty, 40 Ind., 33; Rexford v. Knight, 11 N. Y., 308; Lyon v. Jerome, 26 Wend., 497; Gardner v. Newberry, 2 Johns. Ch., 168; Callison v. Hedrick, 15 Grat., 244; Lewis on Em. Dom., chap. 20, sec. 45, and authorities cited.

4.   If the appropriation of public property to public road purposes under condemnation proceedings instituted by the county is not a taking for the use of the State within the meaning of the constitutional provision, then it is placed within the power of one man, it may be,

to practically prevent the opening of necessary public roads.    Before his land can be taken, he must have adequate compensation.    What length of time is to be consumed in ascertaining what is to be his adequate compensation?    The Constitution fixing no measure of damages, what are to be the rules for ascertaining his damages?    What delays and obstructions are to be encountered in applying those rules?

*John Dowell,* for defendants in error.—1.   The Commissioners Court, in taking appellees' land for a public road, and damaging them by causing them to tear down and remove their fence, without first paying for the land taken and damage done, acted without authority of law, and their acts in proceeding to lay out a public road over appellees' land was a nullity, and the District Court has power and authority to enjoin such illegal proceedings, and the judgment of the court in this case is eminently correct.    Bill of Rights, sec. 17; 4 Sayles' Civ. Stats., 504; 2 Sayles' Civ. Stats., arts. 4371–4373; Bounds v. Kirven, 63 Texas, 159; Railway v. Eddins, 60 Texas, 656; Bourgeois v. Mills, 60 Texas, 77; Floyd v. Turner, 23 Texas, 294; Anderson Co. v. Kennedy, 58 Texas, 616; Hopkins v. Cravey, 19 S. W. Rep., 1067; Llano Co. v. Scott, Texas Civ. App., Austin Term, 1893; Elliott on Roads and Streets, chap. 11, p. 178.

2.   The law under which the Commissioners Court proceeded to act, viz., articles 4372 and 4373 of the act on public roads, 2 Sayles' Civil Statutes, page 502, requires, that just damages and adequate compensation for the land taken shall be allowed the owner, and when paid, or secured by a deposit with the county treasurer, to the credit of such, they (the Commissioners Court) may proceed to have such road opened. Appellees' land was taken; no compensation was allowed.    The road could not be opened until this requisite of the statute was complied with.

3.   The right to open the road depends on having paid, or secured by deposit with the county treasurer, just and adequate compensation for the land taken, and when this is not done, the pendency of an appeal from the action of the Commissioners Court by appellees cuts no figure in the case.    The County Commissioners Court has no right to open the road until they comply with the law allowing them to do so, and this they do not pretend to have done in this case.

DENMAN, ASSOCIATE JUSTICE.—Proceedings having been instituted in the Commissioners Court of Travis County to establish a public road over Trogdon's land, he made claim for damages before the jury of view, who in their report allowed him nothing, and the Commissioners Court having approved the report and ordered the road opened, he appealed to the County Court, where the cause is now pending.

Pending such appeal, the road overseer having attempted under the order of the Commissioners Court to open the road, Trogdon procured the issuance of an injunction from the District Court, which on trial

was made perpetual, but the decree was reformed by the Court of Civil Appeals, as hereinafter indicated.

The Constitution of 1876 provides, that "no person's property shall be taken, *damaged, or destroyed for* or applied to public use without adequate compensation being made, unless by the consent of such person; *and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money.*"

We have *italicized* the words added in the Constitution of 1876, the remainder of said provision having remained unchanged in the Constitutions of 1836, 1845, 1866, and 1868, except that in the Constitutions of 1836 and 1868 the word "just" was used instead of "adequate" in the others.

Thus it appears, that prior to 1876 the Constitution simply required that when property was taken for a public use "adequate compensation" should be made; but made no distinction as to time of payment, or the manner in which the compensation should be made, between the two great classes of cases where property is taken for public use; one class being where the right of eminent domain is exercised in favor of the State, either directly in its own name or indirectly in the name of one of its governmental subdivisions, and the other being that numerous and constantly increasing class, in which the right of eminent domain has been delegated to private persons or corporations engaged in the performance of public or quasi-public duties.

The Legislature in the meantime had construed this constitutional provision as not requiring payment to be made before or at the time of the taking of the property in either class of cases above mentioned, and this court had strongly intimated, if it had not decided, such construction proper, with the qualification, that at the time of taking the property, adequate provision must be made to insure the speedy payment of the compensation; and this seems to have been the construction of similar provisions in other States. Railway v. Ferris, 26 Texas, 588; Smith v. Taylor, 34 Texas, 589; Railway v. Daugherty, 40 Ind., 33; Commissioners Court v. Bowie, 34 Ala., 461; Talbot v. Hudson, 16 Gray, 417; Loweree v. City of Newark, 38 N. J. L., 151; White v. Railway, 7 Heisk., 518. It had also been generally held in other States, that a condemnation by a county for road purposes was a taking by and for the use of the State. See cases above cited. Therefore, when the convention came to revise said provision of the old Constitution, in 1876, it found two questions partially if not entirely settled by construction in this and other States; (1) that said provision did not require the *actual payment* of the compensation at the time of taking the property, no matter whether the right of eminent domain were exercised by the State or by some private person or corporation, it being sufficient if adequate provision be made to insure its speedy ascertainment and payment; (2) that a taking by a county and for the purpose of a public road is a taking by and for the use of the State.

It also found, that the necessities of modern civilization and progress frequently demand that the Legislature confer the right of eminent domain on private persons and corporations, in a class of cases and to an extent not probably contemplated when said general provision was incorporated into our organic law, in 1838, and that in conferring such sovereign power upon persons and corporations over whose finances the State had little or no control, and whose solvency was often questionable, the Legislature had not always been sufficiently cautious in providing a certain and speedy method whereby the citizen might secure the "adequate compensation" provided by the Constitution, and that for want thereof the courts, in order to protect the citizen, had been compelled in some instances to enjoin the taking of the property. Railway v. Ferris, 26 Texas, 588.

It was therefore necessary in this class of cases that some additional guaranty should be provided by the organic law for the security of the property rights of the citizen against improvident legislation, and the possible indisposition or inability of such persons or corporations to pay for the property taken. In order to make such guaranty perfect, it was provided, in 1876, that "such compensation shall be first made, or secured *by a deposit of money.*"

The evil, however, did not exist in that class of cases where the right of eminent domain had been exercised in behalf of the State, whether directly in its own name or through one of its counties, for the State had control of its own finances and those of its governmental subdivisions, and could compel the payment of such claims, and the presumption must be indulged, that the State would deal justly with its citizens.

Therefore, in requiring the compensation to "be first made, or secured by a deposit of money," an express exception was made of that class of cases in which property is taken "for the use of the State." We are satisfied that this language includes condemnations for public roads by County Commissioners Courts, because, as indicated above, such was its construction at the time it was incorporated into the Constitution of 1876; and because it is one of the functions of government to establish and maintain public roads, and no matter through what agency such function is exercised, the roads are the property of and for the use of the State, which, through its Legislature, has absolute control over same, which control it may or may not, from time to time, delegate to the local authorities.

Having determined that the portion of the Constitution above quoted, providing that "such compensation shall be first made, or secured by a deposit of money," has no application to a condemnation of land for a public road, we will next proceed to determine to what extent the Legislature has exercised its power. For though it may have power to take the property of the citizen "for the use of the State" by making proper arrangements for ascertaining and paying compensation therefor, without paying same in advance, nevertheless it may not deem it

proper to exercise such power, but may require payment in advance, as in other cases, or may require payment in advance on condition that the owner will accept the compensation fixed by the Commissioners Court.

The Act of the Legislature approved February 5, 1884, amended article 4372 of the Revised Statutes so as to read: "If the Commissioners Court shall approve of the report and order such road to be opened, they shall consider the assessment of damages by the jury and the claimant's statement thereof, and allow to such owner just damages and adequate compensation for the land taken, and when paid, or secured by deposit with the county treasurer to the credit of such owner, they may proceed to have such road opened. If the owner of the land is not satisfied with the assessment by the Commissioners Court, he may appeal therefrom as in cases of appeal from judgments of Justice Courts; but such appeal shall not prevent the road from being opened, but shall be only to fix the amount of damages."

It can not be denied that the Legislature had power to make the action of the Commissioners Court final. In fact, such was the law prior to the passage of the amendment above quoted, which first allowed the owner the right of appeal on the question of damages.

Since the Legislature had the power, under the constitutional provision above, to provide for the taking of Trogdon's property for the purpose of a public road without paying the compensation in advance, and since it could have made the action of the Commissioners Court final as to amount of damages, as well as to the right to take the property, it follows, that said provision did not inhibit it from the exercise of the lesser power of providing for the taking of the property and opening of the road upon paying or depositing the sum allowed by the Commissioners Court, notwithstanding the appeal. Gas Trust Co. v. Horless, 15 Law. Rep. Ann., 505. If, therefore, the Commissioners Court had complied with the provision of the statute above by allowing to Trogdon "just damages and adequate compensation for the land taken," and "paying, or securing by deposit with the county treasurer to the credit of Trogdon" the sum so allowed, we would have no hesitation in holding that Trogdon had no right to an injunction, pending the appeal.

The statute made it the duty of the Commissioners Court to allow Trogdon (1) "just damages" and (2) "adequate compensation for the land taken."

It is conceded, that the road will take land inclosed and belonging to Trogdon of the value of over $60, and that neither the jury of view nor the Commissioners Court allowed him anything therefor, though his claim was duly presented.

It is contended on behalf of the county, that the jury of view and Commissioners Court had the right to offset both items of liability above stated, by whatever benefits might accrue to Trogdon by reason of the establishment of the road, and that since, on the whole case,

nothing was allowed him, this court should presume, in favor of the validity of such judgment, that the jury of view and Commissioners Court had found the benefits to be equal to both the damages and the value of the land taken, and that therefore Trogdon was not entitled to anything.

The first difficulty encountered in attempting to maintain this contention is, that the *Constitution* does not permit such a disposition of Trogdon's claim.

In Railway v. Ferris, 26 Texas, 588, decided in 1863, this court held, that the constitutional provision above cited, as then in force, required payment to the owner (1) of the intrinsic value of the land taken, without reference to benefits he might derive from the improvement, and that such claim could not be offset by such benefits; and (2) of any damage occasioned to the remainder of the property, in estimating which damages, the benefits to the remainder of the tract were legitimate subjects of consideration.

After this construction of said constitutional provision, it was, as above indicated, incorporated without change into the Constitutions of 1866, 1868, and 1876; and in the case of Dulaney v. Nolan County, 85 Texas, 225, this court approved such construction, and applied the same to the provision of the Constitution now in force as above quoted. We regard this construction of the Constitution as settled law in this State, though there are expressions to the contrary, in an opinion which does not refer either to the Constitution or to the case above, in 26 Texas, 588, construing same.   Bourgeois v. Mills, 60 Texas, 77.

The next difficulty encountered in attempting to maintain the contention of the county is, that the Act of the Legislature above quoted, passed in 1884, after the decision in the case of Bourgeois v. Mills, above cited, expressly requires the Commissioners Court, as above indicated, to allow to such owner (1) "just damages" and (2) "adequate compensation for the land taken," and only authorizes them to open the roads when such allowance is "paid or secured by deposit with the treasurer, to the credit of the owner."

This statute is in harmony with the Constitution as construed by the decisions above cited.   It would probably be within the power of the jury of view and the Commissioners Court, by a decision made in good faith, to conclude that the benefits were equal to the damages sustained by the owner, and therefore refuse to allow him anything on his claim for "just damages" to the land not taken.

This proposition is based upon the apparent truth, that if the benefits equal or exceed the injury to the other property, there is no real or "just damage" thereto.   It is offsetting an incidental and somewhat conjectural injury with a similar benefit.

But both the Constitution and the statute unconditionally command, that "adequate compensation" be made for the land taken, and no offset thereto can be allowed.

It is suggested, that this provision can be evaded by the allowance and deposit of a nominal sum, in compliance with the Constitution and statute. A sufficient answer to this is, that the organic law uses no uncertain or idle language when it commands that "adequate compensation" shall be made for the property taken, and courts of equity have ample power to enforce its mandate, as against a collusive or colorable order designed to defeat it.

We are therefore of opinion, that in refusing to allow Trogdon "adequate compensation for the land taken," the Commissioners Court failed to comply with either the Constitution or the statute, and in failing to pay or secure same "by deposit with the county treasurer," it failed to comply with the statute, and therefore had no authority to order the opening of the road, and was properly enjoined.

While we are of opinion that the condemnation in question was for "the use of the State," within the meaning of the Constitution, and that the provision of the statute allowing the opening of a road pending an appeal is not, therefore, unconstitutional, we agree with the Court of Civil Appeals, in view of the fact that Trogdon's appeal is pending in the County Court, that the judgment of the District Court should be so reformed as to render the injunction inoperative after the County Court of Travis County, or other tribunal having jurisdiction, shall have adjudicated and assessed appellees' compensation, and said compensation shall have been paid to appellees, or secured by a proper deposit of money as required by said statute, and that the costs should be taxed against appellant, Travis County.

It is so ordered.

*Affirmed.*

Delivered June 10, 1895.