## EX PARTE HENRY W. SCHUTTE.

No. 14062.   Delivered December 17, 1930.
Rehearing Denied October 7, 1931.

*Linden & Linden,* of San Antonio, for relator.

*T. B. Cobbs, Jr.,* City Attorney, *C. K. Quin* and *W. C. Davis,* Assistant City Attorneys, all of San Antonio, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, Judge.—Relator seeks release by an original writ of habeas corpus sued out in this court upon propositions which are discussed later.

The city of San Antonio, Texas, has a population of more than 5,000, is incorporated and operating under section 5, article 11, of our Constitution, which is known as the Home Rule Amendment. An ordinance of said city requires that all automobiles carrying passengers for hire on the streets of said city must obtain a license, pay a license fee and make bond in writing as a prerequisite to engaging in such business. Relator in this case was charged in corporation court of said city with operating such vehicle without having made bond. Upon conviction he appealed to the county court at law No. 2 of Bexar county, where upon trial he was again convicted and his punishment fixed at a fine of $10. Affirming the illegality of the ordinance in question, and that he could appeal no further because his fine was less than $100, relator seeks through a writ of habeas corpus release from custody of an officer of the trial court who holds him under a capias profine until said fine and costs be paid.

The attack on the complaint charging relator with operating a car for hire on the streets of San Antonio without having first made the bond required by the ordinance mentioned,—is based on the following propositions and facts, viz: That the courts have held that no license fee could be legally collected by municipal authorities from persons oper-

ating for hire motor vehicles on the streets of incorporated cities; that in the ordinance referred to, the requirement that a license fee be paid and bond be made,—is joint and so commingled and interdependent as that if the one be illegal the other must of necessity also fall; that the conditions of the bond required by the ordinance are unreasonable; that the ordinance is discriminatory, and the terms of the bond required so difficult of compliance as to be confiscatory.

We may say in the beginning that our discussion will necessarily be of the legal questions presented, no facts by agreement or otherwise being before us. There appears a document in the nature of a statement of facts which does not bear the approval of any one.

Examining in reverse order the propositions advanced by relator, we note that the only authority cited in his brief as sustaining his last mentioned contention is City of Arlington v. Lillard, 294 S. W., 829. In its facts and principles involved that case is wholly unlike the one before us. The issue there was the power of a city to deny the right to use its streets to motor busses engaged wholly in inter-city passenger traffic on a highway extending to, through and from said city, which busses declined intra-city passengers from one point to another in said city. The street whose use was forbidden by the ordinance was admittedly a part of a state highway over which said motor busses were engaged in carrying passengers for hire as a business. The Supreme Court of this state held the city without power to deny the use of said streets to said motor busses. We agree to the correctness of this holding.

What rights of relator are contravened by requiring of him a substantial bond. In West et al. v. City of Waco et al., 275 S. W., 282,—affirmed by the Supreme Court in 116 Tex., 472, 294 S. W., 832,—it is in substance declared that no person has any vested right to maintain or claim a public street as a place of business, and that if the city be denied the right to control and regulate the use of its public streets in such regard, such streets would be at the mercy of all who desired to ply any business or trade thereon, and the city would be thus deprived of one of its most valued functions, viz: to protect the inhabitants from such encroachments. In Gill v. City of Dallas, 209 S. W., 209, in a lucid opinion by Judge Rasbury of the Court of Civil Appeals, the lack of right to use the public streets as a place of business by individuals operating public utilities is affirmed and discussed. It is said therein that a sufficient number of public utilities is a great convenience, but that too many of same might be equally as inconvenient, the question being one for the local authorities to determine. The mere fact, if it be a fact, that the ordinance of a city fixes the amount of bond prerequisite to engaging in a public or quasi public business at such sum as that named persons who have sought to engage therein could not pay the cost of a surety company bond for that amount, does not bring us to any

fair conclusion that such bond is therefore necessarily excessive. Inordinate competition or inadequate facilities on the part of such persons, as well as many other considerations, might rightly affect their income without affecting the justice of the ordinance or the amount of the bond demanded. We do not think the ordinance in question on its face discriminatory, or that its effect would be to confiscate the property of any citizen.

We see no need for discussing at any length the right of the city of San Antonio to require a bond from those who seek to engage within said city in the business of carrying passengers for hire. The purpose of the bond is manifestly the protection of the people in and of such city from harm and injuries resulting from the acts of those thus authorized by the city to use its domain and streets as a source of gain. The subject has been treated in many cases and settled adversely to relator. Taylor v. Dunn, 80 Texas, 652; Nelson Co. v. Stephenson, 168 S. W., 61; Greene v. City of San Antonio, 178 S. W., 6. Other authorities are numerous.

We pretermit extended discussion of the proposition that the decision in Doepenschmidt v. The City of New Braunfels, 289 S. W., 425, supports relator's contention. We do not think so, but any expression from us that said opinion incorrectly interprets the legislative denial in article 6698, Texas Civ. Statute, of a grant of authority in that particular act,—into a general denial of such power and authority claimed to be derived from other sources,—would be dicta, and this usually leads only to confusion.

Believing that there is no question of the power and right of the city to require of relator the bond mentioned, and that his failure to give same and his subsequent operation of his car for passenger hire on the streets of San Antonio brought him in conflict with the provisions of said ordinance, it follows that we believe the writ of habeas corpus should be denied, and it is accordingly so ordered.

*Denied.*

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Relator relies upon the decision of the Supreme Court in the case of the City of Arlington v. Lillard, 116 Texas Rep., 446. The city of Arlington attempted to enforce an ordinance prohibiting the use of two of its streets (Abrams and Division) by motor vehicles for hire. Arlington is a city situated between the cities of Fort Worth and Dallas, two of the large cities of the state. The streets mentioned were the only route available to persons traveling from one of the cities mentioned to the other. Lillard, an operator of a bus line on the state highway, a part of whose route was from Fort Worth to Dallas, enjoined the enforcement of the ordinance against him. The

city sought by appeal to the Court of Civil Appeals to have the injunction dissolved. The Court of Civil Appeals referred the matter by questions to the Supreme Court. The questions propounded and the answers of the Supreme Court are found in the case of the City of Arlington v. Lillard above mentioned. Touching the questions the Supreme Court said:

"The facts of the case as pleaded and certified to us raise two distinct and important issues, either of which, under our view of the law, is conclusive of the case. One involves the power of a municipal corporation in the exercise of its dominion over its streets to affect and interfere with the use of a State thoroughfare or highway outside of and beyond the city limits by prohibiting the use of two certain streets within the city, one of which is a part of said highway. This issue is embodied in question No. 1. The other issue is the power of a city to prohibit the use of all its streets to those carrying passengers for hire. This issue is certified in question No. 2."

In ordering the injunction sustained, the Supreme Court said in part:

"Appellees alleged Abrams and Division streets are the only streets or thoroughfares which can be used by them in traveling from Fort Worth and other points west of. Arlington through the latter city to Dallas and other points east of Arlington; that there are no other ways through Arlington over which they may travel; and that a denial of the use of Abrams and Division streets prevents them from passing through the city, which affects and interferes with their use of the state highway between Fort Worth and Dallas and intermediate points. That such a prohibition and denial does affect and interfere with their use of the state highway, not only through the city of Arlington but outside of and beyond that city's limits, is fairly evident."

*   *   *   *   *   *   *   *

"The power sought to be exercised by the city of Arlington, that to prohibit the use of its streets by commercial vehicles desiring to pass through the city, cannot be treated as coming within the fair intent and purpose of its creation reasonably proper to give effect to the powers granted to it."

The second question reads as follows:

"2. *Irrespective of the foregoing question, has a city the right to prohibit the use of its streets, by an ordinance that does not seek to merely control and regulate the use of said streets, to those operating motor busses?"*

Of it the Supreme Court said:

"The other issue, embodied in question No. 2 is based on the allegation that Abrams and Division are the only through streets and that the denial of their use prevents appellees from passing through the city

and is a denial to them of the use of any of the streets or of all the streets of the city."

Relator takes the position that the answer of the Supreme Court to the second question propounded by the Court of Civil Appeals supports the claim that the city of San Antonio was without power to enforce the ordinance. The position is deemed untenable. In answer to the first question, · the Supreme Court declared that the city of Arlington could not legally, by ordinance, block the use of the state highway through the city. The answer to the second question, as that question is interpreted by the Supreme Court, as above quoted, is not regarded as bearing upon the question presented by the relator. The second question mentiond, as shown by the italicized language of the question, relates to the form of the ordinance, the terms of which are not set forth in the opinion of the Supreme Court, and there seems to be no publication of the opinion of the Court of Civil Appeals in the case of City of Arlington v. Lillard, supra. It is true that the Supreme Court uses the following language:

"The other issue is the power of a city to prohibit the use of all its streets to those carrying passengers for hire. This issue is certified in question No. 2."

The interpretation of the question, however, as set forth in the opinion of the Supreme Court, repels the idea that it was in the mind of that court to extend its announcement any further than was called for upon the facts before it, namely, the right of the city of Arlington to obstruct the highway through the city or to control he use thereof without appropriate ordinance.

In the case of City of Ballinger et al. v. Nichols et al., 297 S. W., 480, 481, the Court of Civil Appeals said:

"The decision in the Arlington case is expressly limited to the holding that a municipality may not deny the use of all its streets to intercity motor vehicular transportation for hire, or pass any ordinance that would have the effect of such denial. A city has the general power to regulate the use of its streets, and may even deny their use for private business conducted wholly within the city limits. See West v. Waco, (Texas Sup.) 294 S. W., 832, and cases therein cited."

In the case of West v. City of Waco, 116 Texas, 472, 294 S. W., 832, the Supreme Court said:

"Under the enabling act to the Home Rule Amendment to the Constitution of the state, sections 12, 16, 18, 20, and 21 of article 1175, R. S., the power was delegated to the cities to regulate and control the operation of vehicles carrying passengers or freight for hire on and over the streets and public grounds of the cities.

"The power to prohibit the use of the public square in Waco as a

place of business by commercial vehicles clearly comes within the powers delegated to the city of Waco."

Reasonable restrictions by ordinance of the streets of a city upon which automobiles operated for hire may operate have been upheld by the courts of this state in cases so numerous and so well-considered that the right to make such restrictions cannot be regarded as an open question.

Touching the proposition that the appellant cannot profitably operate his motor vehicle for hire and incur the expense of the bond required by the ordinance of the city of San Antonio, the precedents are numerous against the soundness of his contention. Among them are Auto Transit Company v. City of Fort Worth, 182 S. W., 685, in which an application for a writ of error was denied by the Supreme Court. See also Greene v. City of San Antonio, 178 S. W., 6; Ex parte Sullivan, 77 Texas Crim. Rep., 72, 178 S. W., 537; Ex parte Boble, 78 Texas Crim. Rep., 1; City of Dallas v. Gill, 199 S. W., 1144; Ex parte Parr, 82 Texas Crim. Rep., 525; Craddock v. City of San Antonio, 198 S. W., 634; City of San Antonio v. Fetzer, 241 S. W., 1034.

As stated in the original opinion, the conviction is for operating a motor vehicle without first executing the bond required by the ordinance. Appellant lays stress on the question of license, citing Doeppenschmidt v. New Braunfels, 289 S. W., 425. The subject of license seems rather foreign to the issue here presented. License is a permission. The city of San Antonio possessing the right to regulate the use of its streets by motor vehicles for hire, would obviously have the right to-issue a written certificate of permission. Whether charging a fee for the certificate would be legal is not involved. Article 6658 of the Revised Civil Statutes, 1925, upon which the appellant relies for the contrary view contains the following language:

"This provision shall not affect the right of incorporated cities and towns to license and regulate the use of motor vehicles for hire in such corporation."

In view of the remarks in the original opinion, a further discussion of the subject in hand is deemed unnecessary.

The motion is overruled.

*Overruled.*